UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DAVID TIMM, | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 20-3139 |
| SANGAMON COUNTY, ILLINOIS, THE SANGAMON COUNTY SHERIFF'S DEPARTMENT and JACK CAMPBELL, in his capacity as the Sheriff of Sangamon County, Illinois, | ) |
|        Defendants. | ) |

**<u>MEMORANDUM OF DAVID TIMM IN SUPPORT OF HIS CLAIM FOR EQUITABLE RELIEF</u>**

**I. INTRODUCTION**

The "Americans With Disabilities Act" ["ADA"] incorporates the remedial provisions of Title VII of the "Civil Rights Act of 1964" ["Title VII"] [42 U.S.C. § 12117(a)]. A court, upon finding that an employer has intentionally engaged in an unlawful employment practice, may "order such affirmative action as may be appropriate" including such equitable relief as it deems appropriate [42 U.S.C. § 2000 e-5 (g)(1)].

This Court has broad equitable discretion to fashion remedies to make a victim whole [*David v. Caterpillar, Incorporated*, 324 F.3d 851, 865 (7th Cir.2003)].

David Timm ["Timm"] requests this Court exercise its equitable discretion by: 1) awarding him backpay for lost overtime because he was not reinstated to field training officer status ["FTO"]; 2) directing Sangamon County, Illinois ["County"] to restore 38 accrued sick days he was required to use while he was recovering from hip replacement surgery.

1

## II.  BACKPAY

In Count II of his complaint Timm alleged that the County, through certain acts of officials in the Sheriff's Department, retaliated against him because he had requested accommodations for his disability in violation of the ADA.

In view of the jury's verdict in his favor on his retaliation claim, this Court may award him backpay for losses he incurred.

Among other things, Timm claimed that the County retaliated against him by not appointing him an FTO.  He requested that he be re-appointed an FTO in November of 2017 after he had been away from that position for the better part of a year [Pl.Exh.42a].

During the trial, Timm testified as follows[1]:

A)  A newly hiring deputy goes through four months of field training.  During the first and fourth month, he/she works under the same FTO on his/her assigned shift.  Two different FTOs who work on the two other shifts oversee the new deputy during the second and third months;

B)  An FTO receives one hour of overtime pay for each day he/she works with a new recruit.  The hourly overtime rate in 2017/2018 was approximately $50.00.  In a five day work week this would work out to 5 hours of overtime a week or 20 hours of overtime during a month of field training;

C)  In 2018 and 2019 including Timm there would have been three deputies certified to provide field training on the second shift;

---

[1] In the preparation of this document Timm's lawyer did not have the transcript of Timm's trial testimony.  Accordingly, the factual assertions set forth in this document come from the notes taken during the course of Timm's trial testimony by Caren Mansfield, his paralegal.

D) On November 9, 2017 Timm requested to be placed on the field training list for his shift. On January 6, 2018 his request was denied [Pl.Exh.42a]. Because his request to be returned to an FTO was not allowed, he lost field training opportunities between November 9, 2017 and October of 2019 when he returned to FTO status. During that time period, three newly hired deputies underwent field training; and

E) After his request to be removed from the field training list was granted in 2016, Lieutenant Steil, his supervisor, continued to place new hires with Timm during those time periods when Timm was actively working.

Based upon the foregoing facts, Timm, between November of 2017 and October of 2019, could have had as many as 120 hours of field training overtime hours (20 hr. x 2 months x 3 new hires) which would have earned him $6,000.00 in overtime compensation. This assumes all three new hires would have been assigned to the second shift where Timm worked.

In the event none of the three new hires was assigned the second shift, each would have worked one month on that shift. A field training officer assigned to all of those three would have earned 60 hours of overtime compensation (20 hr. x 1 month x 3 new hires) or $3,000.00.

While there is no certainty that Timm would have been assigned field training responsibilities for all three new hires when each worked on the second shift, the evidence received at trial suggests that there is some likelihood that Timm would have been given the field training responsibilities for them because of his supervisor's practice in assigning new deputies to work with him.

Timm requests that he be awarded backpay damages in a sum of not less than $3,000.00 nor more than $6,000.00 in amount.

### III.  THE RESTORATION OF TIMM'S SICK DAYS

In the fall of 2018 Timm underwent hip replacement surgery.  At that time, he was 43 years of age.  In this case he claimed that the need for that surgery at that time was due to the failure of the County to provide him with the accommodations he requested.

The evidence received during the course of the trial supports his assertion.

First, on August 11, 2017, a month after Timm returned to work, David King, the physician who treated him for his hip injury, reported that Timm:  1) was released from his care because he had reached maximum medical improvement; and 2) would not require any additional treatment in the future including surgeries [Pl.Ex.8].

Second, Timm was seen on February 22, 2018 by Piero Capecci, M.D., an orthopedic surgeon.  Dr. Capecci's examination revealed Timm had post traumatic arthritis of the left hip and he would likely need to undergo hip replacement surgery in the future [Pl.Ex.17].

Dr. Capecci testified in view of Timm's underlying hip condition the process of climbing in and out of a vehicle could lead to the type of repetitive trauma that could cause post traumatic arthritis [pp.17-18 of Capecci Deposition].

He also  indicated that the repetitive nature of a repetitive trauma caused by getting in and out of a squad car as much as 30 times in a work shift could contribute to the need for a hip replacement and accelerate the need for that surgery [p.20 of Capecci Deposition].

Had Timm not undergone the hip replacement surgery he would not have used the 38 sick days he had accrued.

To make him whole Timm asks the Court to direct the County to restore to him the 38 accrued sick days he was required to use when recovering from the hip replacement surgery.

4

David Timm

By: /s/  James P. Baker
James P. Baker
Bar Number: 0097802
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois   62701
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
E-mail:  jpb@bbklegal.com
(Memorandum/ timm david equitable relief 070323)

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Russell L. Reed
Hinshaw & Culbertson LLP
400 South Ninth Street, Suite 200
Springfield, Illinois   62701
Email:  rreed@hinshawlaw.com

By: /s/ James P. Baker
Baker, Baker & Krajewski, LLC

5